FRANK, Judge.
Sheldon and Vivian Dennard entered into a written agreement on April 2, 1988 to purchase land from and a house to be constructed by Tri-Corp. Custom Homes, Inc. The contract provided for the “closing and sale to be contingent upon sale of Buyer’s present home at 4310 No. 17th St., Tampa, Fla. 33610.” The Dennards deposited $1,000 with Tri-Corp. The sale and purchase were to be closed by September 30, 1988. Subsequently, Tri-Corp. requested and received from the Dennards, but without modification of the contract, an additional $9,079.62. The Dennards were not successful in achieving the sale of their 17th Street home. Upon Tri-Corp.’s refusal to return their money, the Dennards sued for the recovery of $10,079.62. TriCorp. counterclaimed for $29,000, an amount claimed to represent the difference between the value of the contract with the Dennards and the amount Tri-Corp. received when it sold the house it had constructed. The trial court denied relief to the Dennards and Tri-Corp. Only the Den-nards challenge the trial court's final judgment. We reverse.
The trial court concluded that:
[Tjhere was a contract for the sale of this house to be constructed and that only the closing was to be contingent upon the sale of their house, of the buyer’s house. There is no mention about a refund of any money, really, other than if the buyer fails to perform they forfeit the one thousand dollar deposit.
The plain language of the contingency expressed in the contract will not sustain the reasoning relied upon by the trial court. Contrary to its view, the contingency is not confined to the “closing”; it includes the “sale.” Moreover, unlike the circumstance where a party to an agreement fails to act in good faith in satisfying an obligation conditioning an executory contract, see, e.g., Giltex Corporation v. Diehl, 544 So.2d 302 (Fla. 1st DCA 1989); Ahl v. RSM Developers & Associates Ltd., 418 So.2d 471 (Fla. 4th DCA 1982), the Dennards were faithful to their contractual undertaking. There is no indication in the record that they, by action or inaction, sought to avoid the commitment to Tri-Corp. Any detriment Tri-Corp. suffered in reliance upon the April 2 contract cannot be laid at the feet of the Dennards.
Tri-Corp.’s principal officer, Gail Owens, asked the Dennards to increase their earnest money, representing to them that a greater amount would improve their borrowing ability with a potential lending institution. The Dennards, however, were not contractually obligated to provide the additional money. Nonetheless they withdrew $9,079.62 from an annuity they owned. Thereafter, in spite of the expectation that Sheldon Dennard’s brother-in-law would purchase the home the Dennards owned and occupied, that transaction did not materialize. The home had also been unsuccessfully listed with a realty company. The equity in Dennards’ home was to be used, upon its sale, to complete the purchase of the Tri-Corp. property. When the September 30 closing date was near at hand and it became apparent that their home would not be purchased by the brother-in-law, and that the listing was ineffective, the Den-nards told Owens to place the Tri-Corp. property on the market. It ultimately sold to another party.
Tri-Corp. initiated construction of the house with full knowledge of the condition the Dennards had placed in the contract. Tri-Corp.’s claim to retention of the Den-nard’s money should have foundered “upon the rocks of the immutable general rule that competent parties are held to the agreements into which they have freely, although unwisely, entered....” Mahler v. Allied Marine, 513 So.2d 677, 679 (Fla. 3d DCA 1987). Thus, the contract terminated on September 30,1988 when the Den-nards had not sold their home. They were entitled to a refund of all money paid to Tri-Corp.
Accordingly, we vacate the final judgment and remand this matter for the entry of a judgment in favor of the Dennards.
LEHAN, A.C.J., and HALL, J., concur.